PER CURIAM:
I
FACTS AND PROCEEDINGS BELOW
On January 16, 1980, the Crystal Palace Gambling Hall filed a Chapter 11 bankruptcy petition. On May 25, 1984, Crystal Palace and Mark Twain Industries (MTI) entered into an agreement whereby Crystal Palace would sell the casino to MTI. Pursuant to this purchase agreement, MTI deposited $450,000 into an escrow account on June 18 of that year.
Crystal Palace had filed a plan of reorganization on May 31, 1984, and on October 1 the district court ordered that the proposed plan be confirmed. In that order, the court stated that “[t]he effective date of the plan shall be the date the sale to Mark Twain Industries closes, which sale shall close not less than thirty (30) days from the entry of this Order.” For some reason, the district court’s order of October 1 was not entered until October 17.
On October 29, counsel for Crystal Palace approached the district court ex parte, without notice to MTI, and sought modification of the district court’s order. As a result, the district judge entered a second order modifying the terms of the first order from “not less than thirty days” to “[the] sale shall close by October 31,1984.” That order was entered on November 1 (the day after the order required the sale to close). On October 30, counsel for MTI filed a motion to extend the time for closing the sale until November 10.
On November 8, MTI petitioned for an expungement of the court’s October 29 order, and sought an order confirming the plan of reorganization. The court granted the motion, expunged its second order, and ordered the sale to occur “on or before ... November 16, 1984.”
Between November 9 and November 19, the debtor filed numerous motions.[1] How *1363 ever, none of these motions sought clarification or reconsideration of the district court’s order that required the sale to close on November 16. On November 13; MTI deposited the purchase price ($4,500,000) with the escrow holder.
On November 15, Crystal Palace filed a notice of appeal from the court order that required sale on November 16. This appeal was entitled In re Crystal Palace Gambling Hall, Inc., Debtor, Crystal Palace Gambling Hall, Inc. vs. Mark Twain Industries, No. 84-2735. Crystal Palace did not seek a stay of the district court’s order pending appeal. On December 27, MTI filed a motion for dismissal of the appeal, and on February 21, 1985, the appeal was dismissed.
On November 16, 1984, the district court appointed a special master for the purpose of considering (1) MTI’s motion for an order to show cause why the debtor should not be held in contempt, (2) Crystal Palace’s motion requiring MTI to forfeit the earnest money deposit, and (3) Crystal Palace’s modified plan of reorganization.
On November 27, Crystal Palace signed an agreement with Margaret Elardi to sell the casino to her.[2] Also on November 27, the special master filed his report and recommendations. Both parties filed objections to the special master’s report, and on December 31, the district judge issued an order as to the objections of both parties. In that order, the court generally adopted the master’s recommendations, and directed the appellants to immediately execute all the closing documents necessary to sell the casino to MTI. Contrary to the master’s recommendation, the judge found both Crystal Palace and its shareholders in contempt of court for failure to close the sale in conformity with his prior order. The judge ordered the debtor and shareholders to pay MTI “any reasonable amounts expended by it for interest on monies borrowed from November 16, 1984, until appropriate documents of sale are properly executed by the debtor ... in compliance with the present order.” The judge also expressed concern that he had been misled into signing the October 29, 1984 order.
The sale to MTI was finally concluded on January 11, 1985. On January 30, Crystal Palace filed a notice of appeal from the district court’s December 31 order, and on February 8, the shareholders joined in that appeal. On February 8, MTI also noticed its cross-appeal of the district court’s December 31 order.
II
JURISDICTION
As we have stated previously, “[w]here the contempt proceeding is the sole proceeding before the district court, an order of civil contempt finding a party in contempt of a prior final judgment and imposing sanctions is a final decision under section 1291.” Shuffler v. Heritage Bank, 720 F.2d 1141, 1145 (9th Cir.1983). The order is final for purposes of section 1291 “[e]ven though the size of the sanction imposed by the order depends upon the duration of contumacious behavior occurring after entry of the contempt order, ....” Id. Thus, the contempt order in this case is appealable. However, the filing of a timely notice of appeal is “mandatory and jurisdictional....” United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960).
MTI alleges that the shareholders did not file a timely notice of appeal. Federal Rule of Appellate Procedure 4(a) states that notice of appeal “shall be filed with the clerk of the district court within 30 days after ... entry of the ... order appealed from____” Fed.R.App.P. 4(a)(1). The order appealed from was entered December 31, 1984, and MTI argues that since notice of appeal was not filed until February 8, 1985, well past the thirty day limit, it was untimely.
*1364 Generally, an notice of appeal must be filed within thirty days. However, under the circumstances of this case, the shareholders had fourteen days after Crystal Palace filed its appeal to file their notice of appeal. Federal Rule of Appellate Procedure 4(a)(3) states:
f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.
The clear language of this rule indicates that this fourteen day period applies to “any other party” to a lawsuit. It does not distinguish between appellants and appellees. This was the viewpoint of those who drafted the rule. The 1966 committee note to this subsection states:
[t]he added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, i.e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords.
Leading commentators have stated that this rule “permits any party to the action ... such added time as the sentence affords.” 9 J. Moore, B. Ward, & J. Lucas, Moore’s Federal Practice ¶ 204.11[1] (2d ed. 1986) (emphasis added); see also id. at ¶ 203.25[3].
The appeal by the shareholders was filed within eight days of the initial appeal by Crystal Palace. Thus, even though thirty days had passed since the final judgment, the shareholders’ appeal was timely, pursuant to Fed.R.App.P. 4(a)(3). Thus, we have jurisdiction over the shareholders’ appeal.
Ill
STANDARD OF REVIEW
“A court has wide latitude in determining whether there has been contemptuous defiance of its order,” and we review a lower court’s decision to impose sanctions for contempt for an abuse of discretion. Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir.1984). Under this standard, a contempt order will not be reversed unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached after it weighed the relevant factors. Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir.1985).
IV
ANALYSIS
A. The District Court’s Standard of Review.
The appellants argue that the district court must accept the master’s findings of fact unless they are clearly erroneous. We agree. See Fed.R.Civ.P. 53(e)(2); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2614 (1971); Leader Clothing Company v. Fidelity and Casualty Company of New York, 237 F.2d 7, 11 (10th Cir.1956). The district court accepted all of the master’s findings of fact and conclusions of law except for the master’s conclusions concerning contempt.
Congress has determined that the power to hold a party in contempt is a discretionary power vested in the court whose order has been violated. “A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority ... as ... disobedience or resistance to its lawful writ, process, order, rule, decree, or command.” 18 U.S.G. § 401 (1982). The appellants in this case did not violate an order of the master, they violated an order of the district court. Thus, the discretion to hold the appellants in contempt remained in the district court and the master’s recommendations on that subject could not bind the court. The judge did not abuse his discretion by disregarding the master’s conclusion and imposing sanctions for contempt on the appellants.
*1365 B. The District Court’s Contempt Order.
Appellants argue that their actions were not contemptuous. They state that (1) exceptional circumstances justified their actions, and (2) MTI had not closed escrow within the thirty days provided for in the plan of reorganization.
1.
The appellants explain that they obtained a commitment from Margaret Elardi to purchase their assets for $690,000 more than MTI had agreed to pay and that these “exceptional circumstances” justified their decision not to transfer the property.
The special master seemed to agree with this “exceptional circumstances” analysis. He stated that “[t]he action of the Debtor in Possession in failing to conclude the sale was motivated by a desire to gain additional monies for its equity security holders and as of this time does not appear to be contemptuous in nature.”
The district court expressed doubts that these “exceptional circumstances” justified disobedience to a court order, particularly in light of its order filed November 8th requiring the sale to close on or before November 16,1984. We agree with the district court. The “exceptional circumstances” offered by the appellants are irrelevant. If a person disobeys a specific and definite court order, he may properly be adjudged in contempt. Shuffler v. Heritage Bank, 720 F.2d 1141, 1146 (9th Cir.1983). “A person fails to act as ordered by the court when he fails to take ‘all the reasonable steps within [his] power to insure compliance with the [court’s] order[ ].’ ” Id. at 1146-47 (quoting Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977)). It does not matter what the intent of the appellants was when they disobeyed the court’s order. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Moreover, the contempt need not be willful. Perry v. O’Donnell, 759 F.2d 702, 704-06 (9th Cir.1985). Even though “[t]he sole question is whether a party complied with the district court’s order,” a party can escape contempt by demonstrating that he is unable to comply. Mazzola, 716 F.2d at 1240. That was not the case here. If the appellants believed that the district court incorrectly issued an order, their remedy was to appeal and request a stay pending the appeal. Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L.Ed.2d 574 (1975); see also Chapman v. Pacific Telephone and Telegraph Co., 613 F.2d 193, 197 (9th Cir.1979). “Absent a stay, ‘all orders and judgments of courts must be complied with promptly.’ ” Mazzola, 716 F.2d at 1240, (quoting Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L.Ed.2d 574 (1975)). Although both Crystal Palace and the shareholders appealed, no stay was obtained. A party cannot disobey a court order and later argue that there were “exceptional circumstances” for doing so. This proposed “good faith” exception to the requirement of obedience to a court order has no basis in law, and we reject the invitation to create such an exception. The appellants were not justified by exceptional circumstances in disobeying the court’s order.
2.
The appellants argue that they were “amply justified” in not executing the necessary documents, since MTI did not close escrow within the thirty days provided for in the plan of reorganization. They assert that MTI should have forfeited the earnest money deposit of $450,000.
This argument is without merit. The sale closed in a timely manner. Both the special master and the district judge found that the parties intended that the running of the thirty-day closing period should begin with the entry of the confirmation order as opposed to the issuance of the confirmation order. This finding is strongly supported by the record.[3]
*1366 However, whether the sale closed in a timely manner, whether there were inconsistencies in the documents, whether the district court was correct, or whether the appellants thought they were justified in their legal position, all became irrelevant when the court filed its November 8th order. That order, in no uncertain terms, required Crystal Palace to execute the necessary documents by November 16. Thus, as of November 8, Crystal Palace had no legal justification for not executing the necessary documents. Again, the appellants’ only recourse was to appeal and obtain a stay pending the outcome of that appeal. No stay was obtained and the documents should have been executed. The appellants’ unreasonable subjective beliefs do not provide legal justification for their disobedience of a court order.
C. The District Court’s Actions,
Appellants also argue that the actions of the court caused confusion and that this confusion was the reason they did not comply with the order. In support of this proposition, Crystal Palace points out that the district judge referred two of its motions to the special master, and therefore, the judge apparently felt that these motions were of sufficient importance and complexity to require this reference. We reject the notion, that by referring these issues to a special master, the court somehow implied that the appellants’ motions were meritorious.
Furthermore, the appellants’ actions betray their allegations of confusion. After the district court ordered Crystal Palace to transfer the documents, Crystal Palace filed numerous motions, but not one of those motions requested either clarification or reconsideration of the court’s order. Nor did the appellants seek a stay while they challenged the court’s order on appeal.
Crystal Palace argues that “[wjhile a party is not free to disregard a lawful order of a court, a party may seek clarification of that order.” At the time the appellants decided not to execute the necessary documents, the district court’s order needed no clarification. The November 8th order explicitly stated that the sale must occur “on or before ... November 16, 1984.” If there had been any ambiguity or uncertainty earlier, that ambiguity ceased to exist when the November 8th court order was issued.
D. Sanctions.
The district court properly concluded that the appellants were in contempt of court. As a sanction, the court ordered that the debtor and its shareholders pay MTI “any reasonable amounts expended by it for interest on monies borrowed from November 16, 1984, until appropriate documents of sale are properly executed by the debtor ... in compliance with the present order.”
In its cross-appeal, MTI argues that the sanctions should include (1) $43,000 in loan fees, (2) the lost use of the purchase price for a two month period, (3) $80,000 in legal fees for “warding off appellants’ various legal attacks on the first order[,j” (4) legal costs in defending the appeal from the district court’s third order, “which this court found meritless and dismissed,” and (5) the two months of lost proceeds it would have otherwise obtained from the operation of the casino.
As we have stated previously, a sanction for “[cjivil contempt is characterized by the court’s desire to ... compensate the contemnor’s adversary for the injuries which result from the noncompliance.” Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir.1983). However, an award to an opposing party is limited by that party’s actual loss. United States v. United Mine Workers of America, 330 U.S. 258, 304, 67 S.Ct. 677, *1367 701, 91 L.Ed. 884 (1947); Shuffler, 720 F.2d at 1148; Falstaff, 702 F.2d at 779.
We affirm the imposition of sanctions. The award of interest on monies borrowed by MTI to consummate the purchase of the casino was not an abuse of discretion. See Shuffler v. Heritage Bank, 720 F.2d 1141, 1148-49 (9th Cir.1983). However, the amount and nature of the sanctions imposed by the court are unclear.
We remand this case to the district court for a determination of the amount of the sanctions to be awarded and whether the sanctions shall include the loan fees, the lost use of the purchase price, attorney fees or the proceeds earned by the casino.
V
CRYSTAL PALACE’S MOTION TO STRIKE AND MOTION TO RECONSIDER
The appellants have filed a motion to strike portions of the Appellee’s answering brief. They state that a number of matters discussed in that brief are not properly before this court and should not be raised in the answering brief. They further argue that if they made procedural errors, MTI should have objected pursuant to Fed. R.App.P. 27(a) and (b).
Ninth Circuit Rule 13 requires that an opening brief recite the procedural posture of the case, what justification a party has for seeking attorney fees, and whether an appeal is properly before this court. The appellee’s brief did not go beyond the scope of this rule. The motion to strike is denied.
The appellants also urge us to reconsider our August 25 order, in which we denied their motion for an extension of time to file a reply brief. That motion is now moot. However, we note that the reply brief was due August 11, but the order gave the appellants until September 2 to file their brief. Thus, although the order denied an extension of time, the appellants actually received a twenty-two day extension.
VI
ATTORNEY FEES AND COSTS ON APPEAL
MTI argues that it is entitled to compensation for attorneys’ fees, costs, damages and other expenses incurred as a result of this appeal pursuant to Federal Rule of Appellate Procedure 38. Pursuant to Rule 38, a party may be entitled to attorney fees if an appeal is frivolous. We conclude that this appeal is not frivolous, and deny the award of attorney fees. Each party will bear its own costs.
VII
CONCLUSION
The district court properly found the appellants in contempt, and its ruling was not an abuse of discretion. We remand to the district court so it can determine the amount and nature of the sanctions to be imposed on Crystal Palace and its shareholders. The appellants’ motion to strike is denied, and the motion to reconsider is moot.
AFFIRMED AND REMANDED WITH INSTRUCTIONS. EACH PARTY WILL BEAR ITS OWN COSTS.

. Crystal Palace filed the following motions: motion for forfeiture of earnest money deposit, motion to extend time, motion to disqualify counsel, motion to continue hearing to take place on November 16, debtor’s objection to application for order compelling sale of property, motion for an order modifying the debtor’s plan of reorganization, debtor’s modified plan of reorganization, ex parte application for an order requiring MTI to forfeit earnest money *1363 deposit, debtor’s first modified plan of reorganization, brief re: rejection of postpetition executory contract.

. Even though the agreement with Elardi was not signed until November 27, the special master found that it was concluded on November 6.

. Although there is a conflict in the terms of several of the documents as to when this thirty- *1366 day closing period was supposed to begin running, three of the four documents that discuss this matter: paragraph 4 of the purchase agreement, the confirmation order (both of which were drafted by counsel for Crystal Palace), and article III of the plan of reorganization, all indicate that the transaction was supposed to occur within a period of time after entry of the order as opposed to issuance of the order,